26 MARCH 2024                    UNITED STATES FEDERAL COURT   Southern District of New York

    PLAINTIFF(S) :
HOLIDAY OLJII ANNA PEDOTTI  the II ("Plaintiff")
        -against-

    DEFENDANT(S) :
BETH ISRAEL MEDICAL CENTER (BUSINESS NUMBER #00073 ; FOUNDED: 1890) , F.D.A.  Food & Drug Administration and Social Security Administration

CRIMINAL  AND   CIVIL CHARGES  WITH DAMAGES  :
$    20,000,000.00   USD  ("TWENTY MILLION UNITED STATES DOLLARS ")

NOTICE : Under the **Federal Tort Claims Act (FTCA)** , The Plaintiff has suffered a Severe Brain Injury ("Brain Injury") with Disfigurement and hereby lists charges of Medical Malpractice against listed Defendants.

By installing an ARTIFICIAL INTELLIGENCE system in the Plaintiff while failing to obtain Informed Consent or detail its use in Hospital Discharge Papers on the date of the Malpractice, Defendants are in a SEVERE Breach of Medical duties to Patients.
        **Such acts of Negligence and Violations of Federal Law including Prevention of Chemical Testing on Human Subjects, violate the Plaintiff's RIGHT TO LIFE and in Defendant BETH ISRAEL MEDICAL CENTER'S capacitance as its listed NPCL Registered Agent is the Secretary of State according to its BY-LAWS and Documents of Incorporation on file at 31 CHAMBERS STREET, FLOOR 7 ; BETH ISRAEL MEDICAL CENTER remains liable under the FEDERAL TORT CLAIMS ACT to to answer to the Plaintiff's claim and remedy Damages listed in full.**

         **************   STATEMENT OF FACTS    **************

1. The Hospital discharge papers list at least one of the Tests or alleged Medical Treatments as NON-FDA APPROVED.
2. The Plaintiff's Name was entered into the Social Security-linked medical system INCORRECTLY:     HOLIDAY OCEANANA     and False Claims were made about her Medical History while undergoing alleged Medical Treatments , while the Plaintiff's Name was not updated until months following the date of the Medical Malpractice :      30 JUNE 2022.
3. No Full Set of CT Scans was released, and statements that "DICOM file contains overlays which may obscure contents of the image. (82 images affected) " and ; "   DICOM file contains no public image data. (4 images affected)"
            <u>IN TOTAL 168 CT SCAN IMAGES ARE OBSTRUCTED FROM THE PLAINTIFF.</u>
4. The Medical Records containing a Fictitious Name that were sent home with the Plaintiff on the date of the Tort failed to list an ARTIFICIAL

INTELLIGENCE DEVICE apparently used in alleged Medical Treatments of the following name : AI DOC, Inc. ("AI DOC") . Upon research,  AI DOC is an Artificial Intelligence company that operates out of a WeWork in Midtown that is in use at various hospitals. It claims to have between Nine (9) and Seventeen (17) FDA Approvals   as of 2024. In the process of Discovery, AI DOC's  employeesindependently verified that its systems          are In Use  within the           MOUNT SINAI Hospital System,  but the product was never disclosed to the Plaintiff.

Its business slogan is: <u>ALWAYS ON</u> AI.    —- *To say, the Plaintiff is unable to <u>turn it off</u>*.

AI DOC operates Neurological and Cardiovascular Artificial Intelligence systems inside the Human System. It claims to offer "Spine Solutions" and more, while the Plaintiff has been left SEVERELY DISFIGURED and is <u>no longer Upright-Standing as of the date of this claim in 2024</u>.

The alleged Medical Treatments substantially resulted in a Brain Injury for the Plaintiff, which falls under the Neuro category. AI DOC has published the following:

## Neuro

Setting the standard for neuro care with real time notification on more than the obvious

**NEUROVASCULAR SOLUTIONS**
- ✓ Anterior LVO, MeVO
- ✓ Posterior LVO, MeVO
- ✓ Brain aneurysm
- ✓ Intracranial hemorrhage
- ✓ Midline shift

> "Real Time Notifications" that respond to 'small details' means this is the most invasive technology possible for AI. To refuse to Disclose Use to Patient or obtain Consent leads to Significant Harm & Damages. It is frequently erroneous and Plaintiff has no Contact Persons at AI DOC to resolve errors.

None of the Neurovascular Solutions listed are noted as Diagnosis in the Medical Records, and therefore the placement of such a device has significantly harmed the Plaintiff, in an undue manner.

5. In BETH ISRAEL MEDICAL CENTER ("Hospital")'s published Legal Handbook titled ("Handbook") : PATIENT'S RIGHTS , the Plaintiff retains the right to a full ACCOUNTING OF DISCLOSURES , to understand who has obtained access to her Medical Records. After Twenty One (21) Months and AT LEAST FIFTY (50) Attempts, including a Grievance filed with COMPLIANCE REF NO.  92834558 , no Accounting of Disclosures has been procured.

6. No HIPAA Releases were signed by the Plaintiff and yet the AI DOC device allows the Plaintiffs physiological system as well as Intellectual Property ("Intellectual Property", "I.P.") to be accessed by any person or entity who can obtain credentials to AI DOC software or , as many have since the date of the Malpractice, to hack the Plaintiff's physiological system and brain.

7. The Plaintiff was left suffering in both the Ambulance as well as the Emergency Room vestibule without ice as she requested and was not being attended to by the nurses or doctors in her presence for at least 30 or more minutes as she writhed in pain asking for ice or for someone to hold her hand.
Therefore, any allegations that Plaintiff was being treated under Triage and did not require Informed Consent are out of question.

8.    Claims of Chronic Homelessness, Tattered Clothing and Welfare are furthermore out of the question as the Plaintiff had no prior record of Homelessness in the United States as a U.S. Citizen  - her Social Security Number did not appear to be accessed or obtained during the Malpractice - and the left sleeve of her white long sleeved blouse was, in fact, cut open by doctors in the Ambulance in order to insert an IV.     PLEASE, KINDLY OBTAIN AND REVIEW AMBULANCE FOOTAGE.
The Plaintiff retains her full Medical Capacity and Mental Hygiene, while it is also true that she receives Disability caused by an External Life Trauma, she maintains her full Legal Guardianship Rights and has no Appointed Overseers of any kind.

9. There was no Alcohol present in the system of the Plaintiff, as Medical Records confirm : BAC 0.0            ,however, the Medical Staff details Chronic Substance and Alcohol Abuse throughout the paperwork.

The Plaintiff showed no signs of Malnutrition or Needle Use in the Medical Records however, the AI DOC device appears to attempt to stabilize her physiologically if her heart-rate increases, <span style="color:red">causing SEVERE interruptions to her daily life, relationships and even members of the public who witness such physiological interruptions.</span>

10. The Plaintiff was immediately released from the Psychiatric Unit without ever being admitted, following the acts of Negligence and Medical Malpractice that resulted in her Brain Injury, proving to the courts that these acts were neither PTSD or Psychiatric Episodes of any kind , and solely a Brain Injury that was not diagnosed whatsoever, but caused by the alleged Medical Treatment itself.
    The Psychiatric unit was provided with Plaintiff's full Legal Name and SSN, therefore proving that the Plaintiff is not Legally

Incapacitated — as the records from the Emergency Care doctors stated. <u>The Plaintiff signed herself out from the Psychiatric Care unit.</u>

11. In an answer to the question of NEGLIGENCE, the Hospital's Incorporation Documents do state the following:
(its purpose is)        PAGE 6 PARAGRAPH A: "  to establish, maintain and operate an institution or institutions with facilities which include […] a broad range of medical services, including dental services, for the diagnosis and treatment of patients, and associated services, including, but not limited to, outpatient care, home care, and extended care<u> provided that the Corporation has obtained all approvals and consents as required by law prior to the provision of any such services</u>;"

The Hospital did not Diagnose or Disclose Treatment(s), nor obtain Consent of any kind before or following the operations that took place over the course of approximately TEN (10) HOURS on 30 JUNE 2022.

12. FALSE CLAIMS:  While this was the first CT Scan that took place in the Plaintiff's lifetime, the Discharge Papers falsely claim to have "obtained and reviewed" previous CT Scans.

The Plaintiff has no history of Altered Mental Status (AMS) , which is a legal status that would be otherwise noted. The Medical Records, which were input using a Fictitious Name, plainly state that she suffers a history of AMS.

The Medical Records identity Plaintiff as Homeless, and Chronically Homeless while the Plaintiff did materially carry her apartment keys on her person; deliver them to Hospital Staff on-site,             and were returned to her person following the alleged Medical Treatment.

This keyring had 4 keys on it: two apartments and one mailbox.

13. Medical Staff involved in the Obstruction and/or Deliberate Destruction of Medical Records include :     YAZMIN NAVARRO, JOSEPH MUIA, and MARIA NIEVES.

14. Only one of three copies of the CT Scan Report contains the following:

"AI DOC: Concordant, no evidence of intracranial hemorrhage."

Therefore the data regarding the Artificial Intelligence device was intentionally destroyed, deleted or obscured from reaching the Plaintiff.

************** DESCRIPTION OF DAMAGES ****************

In due consideration that the Artificial Intelligence device, treatments and/or device components were never disclosed to the Plaintiff, and the Plaintiff has experienced exponential increase in symptoms that can be traced to such a device, Damages in excess of $ 20,000,000 USD are owed.
    REASONING AS FOLLLOWS:

1. The Plaintiff is unable to protect her Intellectual
   Property("Intellectual Property") from either the operators of AI DOC,
   Medical Staff or those aware of the device who have successfully hacked
   their system.

   The AI DOC device installed by BETH ISRAEL MEDICAL CENTER was never
   disclosed to the Plaintiff and is able to be accessed, distributed and
   hacked by groups and persons unrelated to the Healthcare industry.

   RESULTING LOSSES: The Plaintiff, a former journalist, was materially
   present in a Conflict Zone during 2022 and 2023, inside and adjacent to
   the War in the Ukraine in Ukraine, Poland, Moldova and Georgia for a
   total of at least TEN (10) MONTHS – having an Electronic Neurological
   System that was unsecured by any Government resulted in SEVERE HARM and
   Dangerous Circumstances.

To Date, the Plaintiff is unable to disconnect Paramilitary individuals from
the AI Device that was installed by Defendants.

The Plaintiff filed an E11 EMERGENCY STATUS to the United States Embassy while
abroad, demonstrating her awareness of her circumstances and included the data
of persons that are now able to hack and mutilate her person using the AI DOC
device.

One of those individuals, who is not Upright-Standing, has placed her own
system upon the Plaintiff , as a part of ONGOING DISFIGURATION :

    LEFT: PLAINTIFF in Normal Posture
            RIGHT: AI DOC Likeness of Paramilitary Hacker "Natalia"



2. PHYSIOLOGICAL CHANGES :
   The Plaintiff experiences substantial physiological harm throughout the

day, every day in increasing severity.

a) NECK WRINGING:    A range of 50-800+ times a day, the Plaintiffs neck wrings, namely to the Left. This makes a sound that is detectable to those persons nearby to her.

b) LOUD SKULL CRACKING: These loud cracking sounds around the Crown of the Plaintiff's Skull occur 20-50+ times per day. The sounds can be the decibel of a nearby slamming door and are detectable to the persons nearby.

c) SKULL SHAPE: The Plaintiff's skull has changed shape entirely and resembles that of a Polish person named Natalia.

d) FACE LIKENESS SHIFTING: The Plaintiff is frequently  unrecognizable throughout the day. Her face structure shifts entirely on an average of 2-3 times per day into at least 5 or 6 distinctly different individuals' Likenesses. This series of Identifiable persons are individuals whom the Plaintiff dislikes, and appear to be maintained using a non-disclosed database of Artificial Intelligence Facial Recognition software.

The Plaintiff is unable to remove the AI DOC device or account from this database of Facial Software as it was installed under a Ficticious Name.

e) JAW MUTILATION: The Plaintiff's jaw shifts into unrecognizable positions and structures at least 40-500 different times per day. This affects the bone structure, fat quantity and structure, dental positioning, vocal chords , Plaintiff's smile and naturally upwards-moving mouth corners and more.    See Example:

   

LEFT is Normal Position;       2, 3, 4     Images are an average cycle of Likenesses and Jaw shifting that occurs at least 50 and up to hundreds of times each day. These are while Plaintiff is resting her face without talking.



```
5    is Normal Position;    6 and  7   are more examples of Jaw Mutilation.
```

*** Photos 2-7 taken within fifteen (15) minutes. All photos were taken inside of a HOMELESS SHELTER in Upstate New York ***

3. HUMAN INTERRUPTIONS

   a) HEARTRATE INTERRUPTIONS:
Anytime the Plaintiff is walking uphill, feeling aroused or emotionally excited, in love or otherwise ; a series of programmed Artificial Conciousness recordings and Vocal Interruptions ( often Enthusiastic Strangers: " RIGHT ON!" suddenly erupts from the Plaintiffs mouth , or , "YOU OTTA!!! " , even punishment such as "NO, NO , NO , NO , NO! " in a Male voice ) take hold of the Plaintiff's human body until her heartrate is slowed down.

   b) ALCOHOL MONITOR:
The Plaintiff neither has a history of Alcohol Abuse or is on Probation, yet the same series of programmed Artificial Intelligence Robotics arrives her human body when she ingests Alcohol.

This , as well, causes interruptions to her Social and Intimate Life.

    These Physiological Damages connected to the Brain Injury have resulted in a severe change in the Plaintiff's position in life.

4. FRAUD:          Having her face copies and Likeness removed and altered by unauthorized Artificial Intelligence systems leaves the Plaintiff at risk for Identity Theft and Fraud, which she is currently experiencing.


            *** AS A RESULT ***

The AI DOC Device must be removed and the Plaintiff must be compensated.

Rather than targeting Narcotics or Alcohol successfully, as the Plaintiff is not an Addict or a Heavy User, the unmanaged Artificial Intelligence device appears to be targeting other types of repetitive behaviors and randomizing them, such as : My Face, My Voice, Singing, Dancing, Smiling, Feeling Emotions such as Love or Happiness, Breathing, and Resting her Eyes in a single position – during any time of waiting or, especially, looking out a window.

    The Plaintiff is currently living in a Homeless Shelter.

    5.   SUFFERING HOMELESSNESS : As the Plaintiff is repeatedly mutilated and Disfigured ("DISFIGURED") by the AI DOC device, the Plaintiff continues to lose intimacy, human relationships and reputation.

The changes in her appearance are inhuman and startling to others. New Friends and Romantic Partners lose interest quickly, and all previous friends and romantic partners are no longer part of her life.

Social connections are somewhat aware of the circumstances and not willing to participate in the Plaintiff's life due to inability to retain privacy from a person whose brain is carrying a Artificial Device input analysis system , as well as plain Disinterest due to SEVERE DISFIGURATION.

The Plaintiff's friends and loved ones have turned their back on her and call her MENTALLY ILL rather than offer assistance.

In the Homeless Shelter, the Plaintiff is called RETARDED and rocks are thrown at her.

While the Plaintiff is able to think clearly and retains her personality and voice while not being " Stabilized" "Neutralized" "Sterilized" or any other alleged Medical Treatment related to the AI DOC device ;          the Disfigurating motions and physiological interruptions are entirely involuntary, abrupt and uncharacteristic.

6.   CHARGES INCURRED       The Plaintiff was unable to obtain adequate care in the New York Healthcare system due to the non-disclosure of the Artificial Intelligence Device.

The Plaintiff spent the next 20 months searching for Medical Care in various locations and was never able to describe her symptoms accurately.

In POLAND, they Diagnosed the Plaintiff with SOMATOME Disorder, meaning , symptoms of unknown origin. The Plaintiff received two (2) CT Scans in Poland , one next to the border of the Ukraine during the Conflict in the Ukraine.

This data was used to hack the Plaintiff's physiological system.

As the Plaintiff is repeatedly mutilated and reflects the Likeness of a person of Polish origin, she incurred charges in the Ukraine in the vicinity of the person who attached its likeness to the Plaintiff.

Considering she was unable to disconnect the individuals in this locality from her Artificial Intelligence device, she was forced to remain in the vicinity of such Paramilitary individuals for a longer period than originally intended.

These persons with Military ICT ("Information Communication Technology") access are now able to further their reach in order to maintain her health , while they have no responsibility to do so.

The Plaintiff incurred various charges related to her presence in the Ukraine while attempting to remove the AI DOC device.

This adds real charges to the Damages , that the Plaintiff is unable to absorb due to her Debilitating Disfiguration and lack of Community support:

```
              1.700 hv        25 AUG 2023
             13.600 hv        27 OCT 2023
```

***   See Exhibit PAGE 12,13,14,15   ***


************* RIGHT TO LIFE *************

In due consideration that Robotics is not a commonplace component of a Medical Treatment and the Plaintiff appears to be losing her Humanity in every sense, the case calls to question the Constitutional RIGHT TO LIFE and Federal Laws listed below:

PENAL CODE CLAIMS:


   1. CODE OF FEDERAL RIGHTS
           38 CFR § 17.32 - Informed consent and advance directives
The Medical Records contain a series of Hospital Staff-signed documents stating that the Plaintiff was unable to sign her own Consent documents; while the Plaintiff retains her Right to "Decision-making capacity" as defined by CFR on Informed Consent.

As well; the Plaintiff has never assigned or been asked, forced or otherwise requested to assign a "Health care agent" , as defined by CFR on Informed consent . Furthermore, the Plaintiff does not require and has never retained, nor been asked or appointed a "Legal guardian" for any reason ; a Fact to be handled in DUE CONSIDERATION.

2. WAR AND NATIONAL DEFENSE LAW
    50 U.S. Code § 1520a - Restrictions on use of human subjects for testing of chemical or biological agents

ROBOTICS are not an acceptable or widely-used form of Medical Treatment and therefore, to include a robotics system or Artificial Intelligence in an alleged Medical Treatment without disclosing to the patient is a breach of code of medical contract between hospital care employees and its patients as well as U.S. Penal Code preventing the Hospital, as legally represented by the Secretary of State as noted in its by-laws ; therefore a Defense-related entity, and its staff from carrying out chemical or biological testing on human subjects.

> §1520a. Restrictions on use of human subjects for testing of chemical or biological agents (a) Prohibited activities The Secretary of Defense may not conduct (directly or by contract)-
> (1) any test or experiment involving the use of a chemical agent or biological agent on a civilian population; or (2) any other testing of a chemical agent or biological agent on human subjects.

In a violation of its own Articles of Incorporation, as previously cited, the Hospital did <u>not</u> obtain the required Consent, as outlined in the same U.S. Penal Code on the prevention of chemical weapon use on Civilians:

> (c) Informed consent required The Secretary of Defense may conduct a test or experiment described in subsection (b) only if informed consent to the testing was obtained from each human subject in advance of the testing on that subject.

In further violation of its Articles of Incorporation, the Hospital claims to remain apolitical, or neutral in all of its care-related activities. To RESTATE :

> PAGE 9 PARAGRAPH 3 : "The Corporation shall not carry on any propaganda or otherwise attempt to influence legislation […] the Corporation shall not participate or intervene [...] in any political campaign"

**FAILURE TO DISCLOSE the artificial nature of the alleged Medical Treatment forces the Defendants to answer to Human Experimentation and Testing as opposed to plain Negligence as a Medical Malpractice case.**

**Furthermore, the U.S. Food and Drug Administration (FDA) must answer to the case on the nature of the use of FDA-approved alleged Medical Treatments by  AIDOC, INC. (DOS #5664104) and all related patents, individuals, entities and subsidiaries.** *AIDOC, Inc. is a Foreign Business Corporation in New York registered with the New York State Department of State (NYSDOS). The business entity was initially filed on December 2, 2019. The registered business location is at 142 W 57th Street, New York, NY 10019. The DOS process contact is Aidoc, Inc.*         [ OPENGOVNY.COM ]

**Considering this alleged Healthcare company with Seventeen (17) FDA Approvals was founded in 2019 , only five (5) years prior,  and still operates out of a WeWork office – the Food and Drug Administration must be held liable for its use in the Mount Sinai Hospital System.**


```
/s/HOLIDAY OLJII ANNA PEDOTTI    Suffix: II
```
     *PLAINTIFF IS 'PRO SE'*

Отримувач _АС Рівне_ б прикордонний рки Волинське обл
Рахунок _____
_____
(охорони державного кордону та його місцезнаходження, телефон, факс, e-mail)

## Постанова
## адення адміністративного стягнення
## № 101399

_____ серпня 20 23 року                           с. Свободочеє
                                                  (місце винесення постанови)

Начальник 2 групи інспекторів прикордонного контролю ВПС Мориш
(посада, прізвище, ім'я, по батькові уповноваженої посадової особи, яка виносить постанову)
ВПС Рівне капітан
_____,
розглянувши матеріали справи про адміністративне правопорушення щодо:
прізвище, ім'я, по батькові _Педотті Холідей олії Анна PEDOTTI_
_HOLIDAY OLJII ANNA_
дата, місце народження _25.08.1988 р.н Каліфорнія США_
місце проживання _м Чернігів вул Чернівельна 46_
_____
місце роботи, посада _не працює (зі слів)_
_____
дані про притягнення протягом року до адміністративної відповідальності (за наявності)
_не притягалась (зі слів)_
_____
          (число, місяць, рік, яким органом, за що, вид стягнення)
документ, що посвідчує особу _паспорт гр. США А35146015 виданий_
_31.07.2023 р_____
          (вид, серія, номер, ким і коли виданий)
                              ВСТАНОВИВ:
_25 серпня 2023р о 02 год 40хв в пункті пропуску "Мориш" Любомлевського р-ну, Волинс_-
(суть та обставини правопорушення, установлені при розгляді справи, які порушення нормативно-правових актів
_кої області, під час здійснення прикордонного контролю на в'їзд в Україну гр. США_
          установлені під час розгляду справи)
_Педотті Холідей 25.08.1988р.н встановлено стягнення без рамок Юрі-АА яка переміщувалась_
_встановленим терміном перебування в Україні на 89 діб, в сумі перебувала в Україні_
_119 діб проблемі 180 строк тимчасового перебування не продовжився, іншими розумними ср_
_не верифікують розумності перебування в Україні не наведено. виявлено цього порушенням_
_вимогу п. 6 Порядку продовження або скорочення строку тимчасового перебування іноземців_
_на території України затвердженого постановою Кабінету Міністрів України_
_від 15 лютого 2012 р № 150_____
Ураховуючи, що гр. _Педотті Холідей_____ вчинив(ла) адміністратив--
                  (прізвище та ініціали правопорушника)
правопорушення, передбачене частиною _1_ статті _203_ Кодексу України про адміністративні правопо-
рушення, а також обставини, передбачені частиною другою статті 33 та статтями 34, 35 Кодексу України
про адміністративні правопорушення, зокрема _щире розкаяння винного_
                                     (характер учиненого правопорушення, особу, яка притягається
_____
до адміністративної відповідальності, ступінь її вини, майновий стан та інші обставини,
_____
що пом'якшують або обтяжують відповідальність)

На підставі викладеного і керуючись статтями 222¹, 283, 284 Кодексу України про адміністративні правопорушення,                     ПОСТАНОВИВ:

1. Визнати гр. _Леонті Касірєй_
   (прізвище, ім'я, по батькові особи, яка притягається до адміністративної відповідальності)
   винним(ою) у вчиненні адміністративного правопорушення, передбаченого частиною _1_ статті _203_ Кодексу України про адміністративні правопорушення, та накласти на нього (неї) адміністративне стягнення у виді _штрафу 1700 (одна тисяча сімсот) гривень_
   (попередження або штраф, розмір якого зазначається цифрами і словами в дужках)

2. Зазначені кошти сплатити на рахунок: _УК у м. Луцьку /м. Луцьк/ 21081100 UA 4289 999 1011 30 101050000003550 банк Укр (ЄАП) код Орг. (ЄДРПОУ): 38 008351_
   (номер поточного рахунку, код, МФО – зазначається в разі накладення стягнення у виді штрафу)

3. У разі несплати _Леонті Касірєй_ штрафу у строк, установлений
   (прізвище та ініціали правопорушника)
   частиною першою статті 307 Кодексу України про адміністративні правопорушення, на підставі статті 13 Закону України "Про правовий статус іноземців або осіб без громадянства" буде заборонено в'їзд в Україну, а також на підставі частини другої статті 308 Кодексу України про адміністративні правопорушення у порядку примусового виконання цієї постанови органами державної виконавчої служби стягується з правопорушника подвійний розмір штрафу в сумі _3400 (три тисячі чотириста) гривень_
   (зазначається подвійна сума штрафу цифрами і словами в дужках)

4. Документ, що підтверджує сплату штрафу, у разі несплати штрафу на місці вчинення адміністративного правопорушення відповідно до частини першої статті 307 Кодексу України про адміністративні правопорушення надсилається (подається) до: _ВПС "Коршів" ВМС "Рівне"_
   (повна назва підрозділу органу охорони
   _Ковельського р-н. Волинської обл. с. Старовижівськ вул. Некрасовського 1_
   державного кордону (загону морської охорони) та його юридична адреса)

5. Вилучені речі та документи _речі та документи не вилучалися_
   (рішення, ухвалене щодо вилучених документів, речей)

6. Постанова може бути оскаржена протягом 10 днів з дня її винесення в порядку, передбаченому статтями 288, 289 Кодексу України про адміністративні правопорушення.

Уповноважена посадова особа, яка винесла постанову
_Молоренко Володимир_
                                        (прізвище, ініціали, підпис)

Зміст постанови доведено до відома особи, яка притягається до адміністративної відповідальності, на зрозумілій їй мові, копію цієї постанови отримано "_25_" _серпня_ 20_23_ року

✓
(підпис)                                    (підпис)

Перекладач _не залучався_
           (прізвище, ім'я, по батькові, телефон)

                                                20 _ року
Копію постанови надіслано поштою "_-_" _____
                                (підпис, прізвище та ініціали особи, яка відіслала копію постанови поштою)

26 MARCH 2024                                                    UNITED STATES FEDERAL COURT   Southern District of New York



26 MARCH 2024                                UNITED STATES FEDERAL COURT   Southern District of New York

ПОСТАНОВИВ:

1. Визнати гр. _Педотті Холідей Ольджі Анна (PEDOTTI HOLIDAY OLJII ANNA)_ винним(ою) у вчиненні адміністративного правопорушення, передбаченого частиною _3_ статті _203_ Кодексу України про адміністративні правопорушення, та накласти на нього (неї) адміністративне стягнення у виді _штрафу у розмір 6800 гривень (шість тисяч вісімсот гривень)_.

2. Зазначені кошти сплатити на рахунок: (IBAN) UA288999980313070106000015740, отримувач – УК в м.Білгород-Дністровський 21081100, код отримувача ЄДРПОУ: 37607526, банк отримувача – Казначейство України (ЕАП), код класифікації доходів бюджету – 21081100 найменування коду класифікації доходів бюджету «Адміністративні штрафи та інші санкції»

3. У разі несплати _Педотті Холідей Ольджі Анна_ штрафу у строк, установлений частиною першою статті 307 Кодексу України про адміністративні правопорушення, на підставі частини другої статті 308 Кодексу України про адміністративні правопорушення у порядку примусового виконання цієї постанови органами державної виконавчої служби стягується з правопорушника подвійний розмір штрафу у сумі – _13600 гривень (тринадцять тисяч шістсот гривень)_.

а також за наявності підстав, передбачених статтею 13 Закону України «Про правовий статус іноземців та осіб без громадянства», органами охорони державного кордону відносно іноземців та осіб без громадянства приймається рішення про заборону в'їзду в Україну.

4. Документ, що підтверджує сплату штрафу надсилається (подається) до: _Відділу прикордонної служби «Старокозаче» Одеська область, Білгород-Дністровський район, с. Старокозаче, вул. Прикордонна буд. 78_

5. Вилучені речі та документи _не вилучались_

6. Постанова може бути оскаржена протягом 10 днів з дня її винесення в порядку, передбаченому статтями 288 і 289 Кодексу України про адміністративні правопорушення.

Підпис уповноваженої посадова особи, яка винесла постанову:
_Дмитро ФЕНЯК_

М.П.

Зміст постанови доведено до відома особи, яка притягається до адміністративної відповідальності, на зрозумілій мові, копію цієї постанови отримано "_27_" жовтня _2023_ року

Перекладач: _не залучався_

Копія постанови надіслана поштою "___" _____ 20__ року.